**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO,
EASTERN DIVISION**

| | |
|---|---|
| DONALD HOUNSHELL | : |
| | : |
| and | : |
| | : |
| ROBINE HOUNSHELL | : |
| | : |
| *Plaintiff*s | : |
| | : |
| v. | : Case No. 1:19-cv-207 |
| | : |
| HYUNDAI MOTOR AMERICA | : |
| | : |
| and | : Judge |
| | : |
| HYUNDAI MOTOR COMPANY | : |
| | : |
| and | : |
| | : Magistrate Judge |
| JOHN/JANE DOE (1-5) | : |
| Any person responsible for injuries suffered by | : |
| Donald Hounshell (names and addresses | : |
| unknown) | : |
| | : |
| and | : |
| | : |
| DOE CORPORATION/PARTNERSHIP (1-5) | : |
| Any Corporation or other Business Entity | : ***Jury Demand Endorsed Hereon*** |
| whose Employees and/or Agents were | : |
| responsible for injuries suffered by Donald | : |
| Hounshell (names and addresses unknown) | : |
| | : |
| *Defendants* | : |
| | : |

---

**PLAINTIFF'S COMPLAINT**

---

The plaintiffs, for their complaint against the defendants, states as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this action, pursuant to 28 U.S.C. §1332, because

the amount in controversy exceeds $75,000.00 (exclusive of interest and costs) and diversity of

citizenship exists between the parties.   Pursuant to 28 U.S.C. § 1391, venue is properly laid in the Northern District of Ohio, Eastern Division because the events and/or omissions giving rise to the claims occurred in Lake County, Ohio.

**PARTIES**

2.      This is an action for damages or injuries sustained in an automobile accident.

3.      At all times relevant to this complaint, Donald and Robine Hounshell (collectively referred to as "Plaintiffs") were husband and wife and were residents of Wickliffe, Ohio.

4.      Hyundai Motor America is a California corporation with its principal place of business in Fountain Valley, California.

5.      Hyundai Motor Company is a Korean corporation with its principal place of business in Seoul, North Korea you.

6.      At all times relevant to this complaint, Defendants manufacturing, assembling, fabricating, promoting, marketing, selling, leasing, financing, inspecting, recalling, servicing, warranting, retrofitting, modifying, advertising, producing and distributing motor vehicles, through retail distributors and dealers as new, used and leased cars, including the subject 2015 Hyundai Sonata ("Sonata") and each and every component thereof, which Hyundai knew, or in the exercise of reasonable care should have known, would be used without inspection for defects in its parts, mechanisms of design, for use in Cuyahoga County, Ohio and elsewhere.

7.      At all times relevant to this complaint, Defendants, Hyundai Motor Company and Hyundai Motor America (collectively referred to as "Defendants" or "Hyundai"), are/were engaged in the business of researching, designing, testing, constructing, manufacturing, assembling, fabricating, promoting, marketing, selling, leasing, financing, inspecting, recalling, servicing, warranting, retrofitting, modifying, advertising, producing, and distributing motor

vehicles, through retail distributors and dealers as new, used and leased cars including, a new 2015 Hyundai Sonata that was leased, from Hyundai, through its agents and dealers by the plaintiff Donald Hounshell ("Mr. Hounshell")

8.     Specifically, this Court has personal jurisdiction over Hyundai because these defendants have at all times relevant to this cause of action, through agents, officers, distributors and/or representatives: have operated, conducted, engaged in and carried on business, committed tortious acts and omissions in Ohio, and caused injury to a person within the state of Ohio arising out of an act or omission by the defendant outside this state, while defendant was engaged in solicitation or services activity within the state and in the ordinary course of commerce, trade, or use and/or engage in substantial activities within Ohio by maintaining retail outlets, officers, employees, distributors, and/or registered agents in Ohio and selling, and/or leasing products in Ohio and advertising products in Ohio or entering into contracts in Ohio.

9.     The defendants, John/Jane Does (1-5) and Doe Corporation (1-5) and/or partnerships and/or business entities were individuals and/or business entities who at all times herein, were employees and/or agents of the defendants, who were employed by Rick Case Hyundai and were operating within the course and scope of their employment or apparent employment with Hyundai who are or were responsible for the injuries suffered by plaintiff but whose identities are unknown.  The plaintiffs attempted to identify these employees, persons, corporations, and/or partnerships with due diligence but were unable to do so.

**HYUNDAI'S HISTORY**

10.     The Hyundai Group was founded in 1947 as Hyundai Engineering and Construction Company. Hyundai Motor Company was established in 1967 and is the auto sales leader in the Korean domestic market and exports vehicles to nearly 200 countries worldwide.

3

11.     Hyundai entered the U.S. market in 1986. According to Hyundai, most automobile manufacturers had abandoned the entry level market at that time in favor of high end, high price vehicles. Again according to Hyundai, they sensed a large void in the market for people who were not able to find adequate, value equipped cars that met their needs yet were priced within their economic means.

12.     Hyundai's determination to capture this niche market, combined with its inability to compete with other automobile manufacturers, resulted in Hyundai sacrificing safety in order to maintain low cost and higher profit margins. As a result, Hyundai vehicles have been the subject of numerous safety recalls, including safety defects related to seatbelts, airbags, and general crashworthiness issues.

13.     In approximately 2007, Hyundai introduced the Sonata. It was a combination of: (1) the compromised safety standards exhibited by Hyundai vehicles as a result of cost containment measures in order to "capture" their identified niche market; and (2) a profit motive at the sacrifice of safety.

14.     Moreover, the Sonata model, as many other Hyundai models, has been the subject of numerous safety recalls, including recalls related to seatbelts, airbags, and general crashworthiness. Upon information and belief, the 2015 Sonata at issue used the same or substantially the same airbag and seatbelt designs as previous models that had previously been the subject of recalls and safety bulletins.

15.     The Sonata at issue in this case had numerous safety defects which are a direct result of Hyundai's compromised safety commitment in favor of reduced cost, high profit margin and low income niche market penetration.

## FACTS COMMON TO ALL COUNTS

16.     On/or about January 28, 2017, Mr. Hounshell was exiting Route 2 at State Route 305 (west) in Willowick, Ohio, when the Sonata he was driving slid on ice and water and crashed into a structure on the side of the road. The collision caused Mr. Hounshell's Sonata to leave the roadway and collide with a structure on the driver's side door and the front end of the Sonata.

17.     Despite the direct impact to the to the front and driver's side of the door of the Sonata, the side and front impact airbags and all airbags failed to deploy. As a result, Mr. Hounshell suffered significant bodily injury including a broken neck, and blunt force trauma to his shoulder which will require a complete shoulder replacement as well as other significant injuries.

18.     Safety was a primary consideration in Mr. Hounshell's decision to lease the Sonata. In fact, the sales staff at Rick Case (the dealer where the Sonata was leased) represented that the vehicle was safe and told Mr. Hounshell about the vehicles reliable safety features. The sales staff's representation as to the safety of the vehicle and its crashworthiness were critical in Mr. Hounshell's decision to purchase the Sonata.  Mr. Hounshell relied upon representations contained in brochures that he saw online and/or received from Rick Case that further gave Mr. Hounshell the impression that the vehicle was safe.

19.     Although the Sonata was equipped with side impact airbags designed to protect the driver in the event of a side impact collision and front airbags for front end collisions, these airbags did not deploy when the Sonata collided with the structure on the side of the exit ramp.

20.     The injuries sustained in the collision were directly and proximately caused by the defective and negligent design, manufacture, distribution and sale of the subject Sonata by the defendants, which represented a foreseeable hazard to the vehicle's driver in the event of a collision.

21.     Hyundai was under obligation to report defects and similar incidents through the Safety Act and Thread Act, 49 USC Section 30101, et seq.

## COUNT I
## MANUFACTURER'S STRICT LIABILITY

22.     The plaintiffs reallege the previous paragraphs as if fully restated herein.

23.     Pursuant to R.C. Chapter 2307, the Sonata and its airbag were defective in manufacture and design in a way that was unreasonably unsafe.

24.     The Sonata and its airbag was also defective, pursuant to R.C. Chapter 2307, due to inadequate warning, instruction, and for failure to conform to representations made by the defendants when leaving their control.

25.     At the time of the manufacture, distribution, sale and/or lease of the Sonata by the defendants, the Sonata and its airbags were in a defective condition and unreasonably dangerous when put to a reasonably anticipated use in at least the following respects:

A.     The Sonata failed to provide adequate safety instructions, directions and/or warnings did not accompany the Hyundai airbag and/or sensor system of the subject vehicle;

B.     The defendants improperly placed the front and subjects side impact airbag sensor in a place and manner that the sensor was not able to reasonably and sufficiently detect crashes;

C.     Hyundai failed to appropriately alter the crash sensor computer system so that the sensor computer system could detect a potentially decreased crash signal;

D.     The sensor systems could have been placed in a way and manner that it would provide a more robust crash signal to the sensor;

E.     Hyundai failed to properly design the airbag sensor system to ensure the complete, proper and timely deployment of the front and side impact airbags in the event of a front and/or side impact;

F.     Hyundai failed to use reasonable care in the design, testing and construction of the front and side impact airbag systems;

G.     Hyundai failed to properly design, test and construct the front and side airbag

systems so that they would be reasonably safe and would deploy in the event of a crash;

H.      Hyundai failed to provide any warnings that the airbag sensors and airbags themselves might not deploy in the event of a crash;

I.      Hyundai continued to sell the defective airbag and airbag sensor systems when the defendants knew or through the exercise of reasonable care, should have known that the Sonata airbag and airbag sensor systems were not properly set and/or collaborates for use by Mr. Hounshell or other consumers;

J.      The airbag sensors and/or settings and/or computer were improperly manufactured and/or designed in a way that would cause a short circuit resulting in the failure of the airbags to deploy.

K.      Such further and additional defects as discovery and the evidence reveal.

26.     The defective and unreasonably dangerous condition of the airbags and airbag sensors existed at the time the subject Sonata was designed, manufactured, distributed, sold and/or leased by the defendants.

27.     The Sonata was being used in a manner reasonably anticipated at the time the Plaintiff was injured on/or about January 28, 2017.

28.     As a direct and proximate result of the aforesaid occurrence, the plaintiff sustained serious and permanent injuries as set forth herein.

29.     As a direct result of the injuries, the plaintiff has been caused to undergo reasonable and necessary care and treatment and has incurred costs associated with that treatment, and will continue to require such treatment and incur costs into the indefinite future.

30.     The defendants knew or reasonably should have known that death or severe bodily injury was substantially likely to occur as a result of the defective and unreasonably dangerous condition of the Sonata as described above.

31.     The defendants' conduct was a direct and proximate cause of the plaintiff's injuries.

32.     The defendants' conduct also constituted malice, ill will and a conscious and

flagrant disregard of the rights and safety of persons who might be harmed by the failure of the airbags to deploy in a crash.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**

33.     The plaintiffs reallege the previous paragraphs as if fully restated herein.

34.     Prior to the plaintiff's purchase of the Sonata, the defendants induced its purchase by expressly warranting to the plaintiff that consumers (including plaintiff) could expect to safely use the subject vehicle for its intended purpose.   Specifically, the defendants expressly warranted that their airbags would deploy upon crash and keep its user from traumatic impact inside the vehicle.

35.     The defendants publicly communicated this express warranty in a manner directed to the attention of the public and ultimate consumers, including the plaintiff.   For example, via advertisements, the Internet, and descriptions of the product.

36.     In using the Sonata, the plaintiff relied upon the skill and judgment of the defendants and their express warranty.   However, the express warranty was not true.   The Sonata was unfit, unsafe, and unusable for its intended purpose.

37.     The defendants breached their express warranty and, as a direct and proximate result, the plaintiff suffered the injuries set forth in this complaint.

38.     The defendants' conduct also constituted malice, ill will and a conscious and flagrantdisregard of the rights and safety of persons who might be harmed by the failure of the airbag system of the Sonata.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF FITNESS

39.     The plaintiffs reallege the previous paragraphs as if fully restated herein.

40.     The defendants impliedly warranted that the Sonata was fit for its intended purpose; keeping its user protected from blunt impact in the event of a crash.

41.     In using the Sonata, the plaintiff relied upon the skill and judgment of the defendants and their implied warranty of fitness.   However, the implied warranty was not true. The Sonata airbag system was unfit, unsafe, and unusable for its intended purpose.

42.     The defendants breached their implied warranty of fitness and, as a direct and proximate result, the plaintiff suffered the injuries set forth in this complaint.

43.     The defendants' conduct also constituted malice, ill will and a conscious and flagrant disregard of the rights and safety of persons who might be harmed by the Sonata airbag system.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

44.     The plaintiffs reallege the previous paragraphs as if fully restated herein.

45.     The defendants impliedly warranted that the Sonata was of merchantable quality, fit, safe, and in proper condition for the ordinary use for which automobiles are designed and used.

46.     The defendants also impliedly warranted that the Sonata was of merchantable quality, fit, safe, and in proper condition for its intended purpose; keeping its user protected from blunt impact in the event of a crash.

47.     In using the Sonata, the plaintiff relied upon the defendants' implied warranty of merchantability.   However, the Sonata was not of merchantable quality and was unfit, unsafe, and unusable for its intended purpose.

9

48.     The defendants breached their implied warranty of merchantability and, as a direct and proximate result, the plaintiff suffered the injuries set forth in this complaint.

49.     The defendants' conduct also constituted malice, ill will and a conscious and flagrant disregard of the rights and safety of persons who might be harmed by the airbag system installed by Hyundai.

**COUNT V**
**NEGLIGENCE**

50.     The plaintiffs reallege the previous paragraphs as if fully restated herein.

51.     The plaintiff relied upon the advice, instruction, and expertise of agents and/or employees of the defendants dealer as to the appropriate and safe, type, style and design of the Sonata airbag system.

52.     The defendants owed the plaintiff a duty of care and the defendants breached that duty.  Said breach includes a failure to: a) warn of the inherent safety risk in using the subject Sonata; b) warn of the potential dangers and defects of the Sonata airbag system; c) warn of the potential consequences and injuries that could result from the use of the Sonata in the event of a crash; d) provide adequate instructions for using the Sonata; e) properly design the Sonata airbag system so as to avoid or minimize the extreme risks to its users; and f) warn of the potential for sudden and catastrophic failure and/or malfunction of the Sonata airbag system.

53.     The defendants' breach constitutes negligence and directly and proximately caused the plaintiff to suffer the injuries set forth in this complaint in the following ways:

A.      The defendants negligently and carelessly failed to design, manufacture and sell the Sonata with appropriate and properly working airbag safety devices with sensors that were properly placed and properly working so they would deploy in a crash;

B.      The defendants negligently and carelessly designed, manufactured, distributed and sold the Sonata without instructions or warnings about the safe and

10

appropriate use of the Sonata in the event of a crash;

C. The defendants negligently and carelessly failed to heed industry warnings, customs and practices of other manufacturers in the industry and breached the standard of care by failing to properly assemble the airbag and properly place and calibrate the sensor systems;

D. The defendants negligently and carelessly failed to test, study and research the subject Sonata and possible ways in which to position and to assemble the Sonata to prevent maximum forces on the Plaintiff in the event of a crash.

E. The defendants negligently and carelessly designed, manufactured, distributed and sold the subject Sonata without instruction or warnings for use and maintenance of the airbag system to prevent injuries;

F. The defendants negligently and carelessly failed to recall or retrofit the subject Sonata so as to make the airbag system reasonably safe.

G. The defendants negligently and carelessly failed to warn of the dangerous condition of the Sonata airbag system; and

H. Such further and additional acts and omission as discovery and the evidence reveal.

## COUNT VI
## LOSS OF CONSORTIUM

54. The plaintiffs reallege the previous paragraphs as if fully restated herein.

55. As a direct and proximate result of the defendants' negligence, Plaintiff, Robine Hounshell has lost the society, services and consortium of her husband, Mr. Hounshell and has incurred medical expenses to treat Mr. Hounshell's injuries and will incur such expenses into the future.

**WHEREFORE**, the plaintiffs pray that this Honorable Court will render judgment in favor of the plaintiff and against the defendants, jointly and severally, as follows:

1. For compensatory damages in the amount in excess of $75,000.00;

2. For special damages, in excess of $2,200,000, to fully compensate the plaintiff for all injuries and damages, both past and present, including but not limited to, past and future medical expenses, costs for past and future rehabilitation and/or home health care, lost income, permanent disability, including permanent instability and loss of balance, and pain and suffering;

3.      For attorneys' fees, expenses, and costs of this action;

4.      For punitive damages as permitted by law;

5.      For pre-judgment and post-judgment interest in the maximum amount allowed by law;

6.      For other such relief as this Court considers necessary, just, proper, fair, and/or equitable.

Respectfully submitted,

/s/ *Mark W. Biggerman*
William A. Carlin (0009144)
wcarlinesq@aol.com
CARLIN & CARLIN
Mark W. Biggerman (0064092)
mark@mblegal.com
29325 Chagrin Blvd., Suite 305
Pepper Pike, Ohio 44122
(216) 831-4935
(216) 831-9526   {fax}

*Attorneys for the Plaintiffs*

## DEMAND FOR JURY TRIAL

The plaintiffs hereby demand a jury trial on all issues herein.

/s/ *Mark W. Biggerman*
Mark W. Biggerman (0064092)

## CERTIFICATE OF SERVICE

I hereby certify that, on January 25, 2019, a copy of Plaintiff's Complaint was filed

electronically.   Notice of this filing will be sent by operation of the Court's electronic filing

system to all parties indicated on the electronic filing receipt.   All other parties will be served by

regular U.S. mail.   Parties may access this filing through the Court's system.

/s/ *Mark W. Biggerman*
Mark W. Biggerman (0064092)